EXHIBIT "A"

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                SUPERIOR COURT
                                              CIVIL ACTION
                                              NO. 89-1519

THOMAS DOYLE, et al,
Plaintiffs

vs.

SHERIFF OF MIDDLESEX COUNTY, et al,
Defendants

## MEMORANDUM OF DECISION ON CIVIL CONTEMPT AND FURTHER ORDER AND AMENDMENT TO AGREEMENT FOR JUDGMENT ENTERED OCTOBER 1, 1993

This case came before the court on a Complaint for Civil Contempt. The plaintiffs are the inmates of the Billerica House of Correction. The defendants are the Middlesex County Sheriff, the Middlesex County Commissioners and the Massachusetts Commissioner of Corrections.

## PROCEDURAL HISTORY

The procedural history of this civil action dates back to March of 1989. Originally, a class action was brought for injunctive relief by the inmates asking this Court to enjoin the defendants from violating the civil rights of the inmates alleging overcrowding at the Billerica House of Correction. On November 13, 1989 and April

30, 1990, this Court entered preliminary orders and injunctions regarding the overcrowding conditions at the Billerica facility. On October 1, 1993, these orders became permanent in a Memorandum of Understanding, which was construed by this Court as an Agreement for Judgment MRCP Rule 58(a). On October 18, 1994, upon motion of the defendant, an order was issued to modify the judgment, which addressed the number of pre-trial detainees (limited to 50) and the total inmate population (limited to 835).

On March 10, 1995, this Complaint for Civil Contempt was filed. It alleges that the defendants have violated paragraphs 10(f) and 10(i) as amended in that the inmate population greatly exceeds the limit prescribed by this Court, and further alleges that the defendants have violated paragraphs 10(h), 10(j) and 10(k) in that the defendants have utterly failed to take the measures required to reduce the inmate population as set out in said sections.

This matter came before this Court on October 16, 1997 where the parties reported that they have reached a settlement of the Contempt Complaint. This Court reviewed the proposed settlement[1], and entered a Post-Judgment Procedural Order

---

[1] This was not to be treated as a consent decree.

which addressed the issues of notice to the class[2], and the time and manner of filing any objections to the proposed settlement. This Order required postings of the proposed settlement entitled "Further Order Regarding Earned Good Time Credits (Further Order)" to be posted at various locations within the House of Correction at Billerica. See Mass. R. Civ. Proc. R. 23(c). The Further Order set out a procedure for an inmate to be awarded statutorily permitted earned good time credits for the period of time the inmate was locked in his cell, and unable to participate in programs where he would have been able to earn these credits. Mr. DeMoura, counsel for the inmates, was to file any objections to the proposed settlement with the Court.

As a result of the posting of the notices, Mr. DeMoura submitted to the Court the eight objections by members of the plaintiff class to the proposed settlement of the contempt action. Additionally, the Court received directly three objections. All of the eleven objections were by way of letters from the inmates. After review of the objections and conference with counsel, this Court determined that it would hear from two inmates, who seemed to represent in their objections the concerns of the class. The written objections to the proposed settlement basically addressed two issues: one, the allocation of a maximum of 7.5 as opposed to 12.5 days good time credit per

---

[2] Although it appears from the docket that there was no formal finding by this Court that this suit was properly a class action under Mass. R. Civ. Proc. R. 23(b), all parties have treated it as such.

3

month and two, the continued overcrowding, the conditions at the facility and the amount of time inmates are locked in their cells.

On December 12, 1997, the Court held a hearing on the proposed settlement of the class action. During the hearing, two inmates testified. Mark Stacey had been incarcerated at the House of Correction from March 1995 to September 1996.[3] Expanding on the objections he stated in his letter, he testified as to the conditions during that period of time, and alleged that Billerica was clearly over the cap during that period in violation of the Judgment; that inmates were out of their cells less than four hours per day in violation of the Judgment; that inmates should be allotted 12.5 days not 7.5 days and that the allocation of the burden of proof regarding proving entitlement to credits was misplaced and on the prisoners. James B. Currier, presently an inmate at Billerica, described similar conditions and objections and suggested to the Court that the Court visit the House of Correction to personally view conditions which were described at this hearing.

On December 8, 1997, this Court toured the main building and modular units at the House of Correction at Billerica. This tour lasted several hours. The Court first toured the main building which was constructed in 1929. The majority of the inmates are housed there. During this tour, this Court made several disturbing observations.

---

[3] Mr. Stacey at the time he testified was serving time at another institution.

4

Other than individuals who were being held on bail who were single-bunked pursuant to the original Judgment in this case, all other inmates were double-bunked. In direct violation of the Judgment in this case, Paragraph 10(e), the inmates were being locked in their double-bunked cells for approximately 21 ½ hours per day. There are a total of 298 cells in three tiers in the main building. Six of those cells are 58.1 square feet, and the remaining 292 cells are 49.3 square feet. The latter cells are approximately nine feet by six feet and contain a double bunk and an open toilet. The open toilet is within an inch or two of the lower bunk. In order for one inmate to use that toilet in any fashion, the other inmate would through necessity be within feet of him. The height of the cell is approximately eight and one-half feet. There was nothing else in the cells: no shelf, closet, bureau, chair, etc. There appeared to be no personal items present. The cell walls and ceilings were comprised of peeling cement. The cell door was solid except for a small square opening which contained bars. On the opposite wall, was a barred window. Two people could not pass each other in the cell without climbing around each other and touching each other. One could not sit on the floor. When locked in these cells double-bunked, an inmate can either lay on the bunk or stand next to the bunk. The bunk itself occupied most of the six foot width of the cell, and most of the nine foot length of the cell. These cells were being occupied by the main population. They were also being occupied by the protective custody inmates

5

and those in the disciplinary unit. There were further restrictions on the inmates in the protective custody unit and the disciplinary unit, including having their meals in these cells as opposed to the cafeteria and being locked in these cells even more than the other inmates in the main building.

The tour of the modular units which have been constructed since the beginning of this law suit showed improved conditions for the inmates. Although the construction of these units did not appear to envision a permanent occupancy, the living conditions themselves were a far cry from the deplorable conditions in the main building. Programs were available to these inmates if they earned the opportunity to participate and some privileges were also afforded them. The inmates slept in locked rooms and were allowed personal items. Although shared with other inmates, they were not locked into these rooms for excessive periods of time. Unlike the inmates in the main building, they were allowed to watch television from time to time.

## DISCUSSION

### Part I Award of Good Time Credits

In regard to the issue of the remedy and procedure for awarding statutorily earned good time credits, it appears to this Court that this proposal for settlement of the Contempt Complaint is fair, reasonable, adequate and in the best interests of the Plaintiffs. See Sniffin v. Prudential Ins. Co. Of America, 395 Mass. 415 (1985). This

Court recognizes the inmates objection to not being awarded 12.5 days as opposed to 7.5 days, but also recognizes that although the practice at the House of Correction previously was to allow good time credits above the 7.5 days provided by statute, this was not statutorily authorized, see M.G.L. Ch.127 §129D. The County of Middlesex has been abolished since the inception of this law suit and the State has a legitimate interest in not setting a State precedent by agreeing to an amount of good time which is not authorized by statute. Furthermore, the days were not actually earned. Having considered the merits of the claims and the terms of the settlement of this contempt action as it relates to the remedy of the awarding of good time credits, this Court hereby approves the implementation of the settlement in this regard. In recognition of the fact that inmates were being continuously classified and released, the procedure as set forth in the Further Order was to be implemented immediately upon its being entered on January 5, 1998.

### Part II Confinement - Double-Bunked Cells

The Judgment provides in pertinent part that:

> this Court specifically retains jurisdiction over this matter to insure compliance and to issue additional orders as may be required in the interests of justice. Paragraph 13, Agreement for Judgment.

The Judgment also provides in pertinent part that:

> No inmates shall be locked in double-bunked cells without their

7

consent for more than eight consecutive hours and only between the hours of 6:00 p.m. and 7:00 a.m. Paragraph 10(e), Agreement for Judgment.

Clearly, the House of Correction is in violation of this section, Paragraph 10 (e). The plaintiffs in their objections have brought to this Court's attention the fact that they are locked in their cells double-bunked in excess of twenty hours per day. Although not specifically designated in the contempt complaint, this matter has been brought to counsels' attention and to the parties' attention by this Court, both in discussion of the objections filed by the plaintiff class members, testimony of inmates at the hearing, its own observations on the tour, and at status conferences and hearings. This Court has invited the defendants to submit to this Court a proposed schedule and solution to the clear violation of the Judgment by the defendants. Not only have the inmates been locked up in double-bunked cells for more than eight consecutive hours during the evening hours from 6:00 p.m. until 7:00 a.m., they have been locked up for all except approximately 3 ½ hours per day which includes the time between the hours of 7:00 a.m. until 6:00 p.m. The Judgment prohibits being locked in double-bunked cells at any time during these hours.

As a result of the Court's suggestion that the defendants propose a remedy to the obvious ongoing violation, the defendants have submitted a proposed schedule to this Court to address this violation. Counsel for the plaintiffs as well as counsel for

the defendants have informed the Court that in April, 1995 there was a disturbance at the House of Correction and as a result, severe limitations were placed on inmates, including but not limited to a vast increase in the amount of time which inmates are locked in their cells. Whatever the situation was which merited that action at that time, it is now almost three years later, and ample time has certainly passed to calm the situation and implement alternative methods of dealing with those problems. The proposed schedule is attached to this order and marked "A". Also submitted was an explanation which references the pre-April, 1995 disturbance which is attached hereto and marked "B". Counsel for the plaintiff class as well as counsel for the defendants have agreed that this is a schedule which addresses the Court's ruling under paragraph 10(e) of the Judgment, and is capable of being implemented upon short notice. It is represented to be satisfactory to all parties.

This Court has reviewed the proposed schedule and finds that it adequately addresses the issues raised by the inmates being locked in double-bunked cells for excessive periods of time. This Court recognizes that the defendants operate under budgetary, manpower and other administrative restraints. This Court further recognizes that these defendants do not control the number of individuals who are committed to this institution. Obviously, serving a sentence is not designed to be a pleasurable experience. Neither is it one where minimal standards of decency are to

be ignored. This Court recognizes the legitimate needs of the House of Correction to keep order within the institution, to implement rules and regulations, to discipline inmates for non-compliance and to insure the safety of the inmates and the employees, guards and other personnel. This Court further recognizes that the decrepit physical facility and the extraordinarily small cells being used to house two people is not a situation which they created. However, it is a situation with which they must live and deal. To confine two inmates in those extraordinarily small cells for excessive periods of time on a daily basis where no disciplinary infraction was committed nor recent disturbance having occurred, is unconscionable and violative of the Judgment in this case.

## ORDER

The agreed upon proposed schedule (attached hereto and marked "A") is to be implemented without further delay and within two weeks of the date of this order. It is hereby incorporated into the Agreement for Judgment, paragraph 10(e), as a further order of this Court. The parties shall report to this Court on April 1, 1998 in Essex,

Salem Superior Court at 2:00 p.m. as to their compliance with said order. Said Complaint for Civil Contempt shall be dismissed on June 1, 1998 unless otherwise ordered by this Court.

_Christine M. McEvoy_
Christine M. McEvoy
Justice of the Superior Court

Dated: March 13, 1998

entered March 16, 1998