FILED
CLERKS OFFICE
2005 MAR 10 P 1:14
U.S. DISTRICT COURT
DISTRICT OF MASS

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-11192-NMG

Eric Kelley,
Plaintiff, Pro Se

v.

Sheriff DiPaola, Superintendent Norton, Officer Thurman Hall, Sgt. Joseph Flynn, Billerica House of Correction Legal Dept., Attorney Lee Gartenberg, Attorney John Goggin, Commissioner of the Massachusetts Board of Health, Commissioner of Public Safety, and Billerica Board of Health,
Defendants.

**PLAINTIFFS MOTION FOR AN INJUNCTIVE ORDER NOT TO TRANSFER THE PLAINTIFF TO A STATE PRISON WHILE AWAITING TRIAL.**

**Now Comes,** The plaintiff in the above captioned matter, and respectfully requests that this Honorable **ORDER** THE DEFENDANTS (who assert that they are a state agency). not to place the plaintiff in a state prison under the guise of 52§a M.G.L.A. as a pretrial detainee in a state prison setting.

The plaintiff completes his county term on March 31st. 2005, He has been told by (these) state correctional defendants that he will be sent to M.C.I. Concord awaiting trial as pre-trial detainee in Suffolk matter COM. V. KELLEY 03-10726.

Respectfully;
Eric Kelley

CERTIFICATE OF SERVICE
I sent the (defendants) a copy on 3/7/05 D.O.C. Nancy White Esq, /Atty. Generals counsel Eva Badway.
Eric Kelley

# Affidavit In Support Of Motion For A Protective Order (and Ruling).

I am Eric Kelley the Plaintiff, and the following is true;

1) I've Spent a total of 19 months in State Prison while awaiting trial as a Pretrial detainee

2) The defendants in their opposition to my Motion for Summary Judgement claimed that since 1999 the became a state agency.

3) The <State> classification Board told me that after I completed my House of Correction Sentence on March 31st. 2005 I'd be "Sent to Concord or Some State Prison to await trial on my current Pending criminal matter identified as Comm. v. Kelley 03-10926 (Suffolk Superior)

Truthfully Eric Kelley
Eric Kelley

The plaintiff submits the following "Tuttle Motion" as Memorandum to support that under the 52A or any State Law, it is unlawful "to place a pretrial detainee in a Punishment setting" Bell v. Wolfish.

EXHIBIT "A"
Tuttle Desion

Plaintiff request that the Judge (Order) that such Placement is unlawful and unconstitutional.

Eric Kelley

Eric Kelley

* this Motion was Allowed

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

Hampden, ss

Hampden Superior Court
Indictments 00-1511 1-6

COMMONWEALTH )
v. )
DAVID TUTTLE )

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REMAND TO HOUSE OF CORRECTION

HAMPDEN COUNTY
SUPERIOR COURT
FILED
FEB 22 2002
CLERK-MAGISTRATE

STATEMENT OF THE CASE

Defendant David Tuttle was transferred to MCI Cedar Junction from the Hampden County House of Correction on January 9, 2002, from the Hampden County House of Correction, where he was awaiting trial in this matter. His bail is $100,000, and he is not under sentence.

There is no Court order sanctioning Mr. Tuttle's removal from the House of Correction to MCI Cedar Junction. Mr. Tuttle is represented by the same attorney today as he has been since October 31, 2001, and no notice was ever provided to this attorney of any petition to remove Mr. Tuttle to a correctional institution, either prior to his removal or since then. By motion, Mr. Tuttle seeks remand to a House of Correction.

ANALYSIS

Chapter 276, Section 42 provides that persons charged with a crime shall be admitted to bail, and if not admitted to bail, committed to "jail for trial." Mr. Tuttle was committed to jail for trial on this matter, as he failed to post $100,000 bail.

There is a strong and historic legal framework under which confinement to state prison is limited only to persons who have been sent to prison appropriately. At least since *Jones v. Robbins*, 8 Gray 329 (1857), it has been recognized that a person confined inappropriately has an Article XII constitutional interest in being free from improper confinement.

The vitality of the *Jones* rule was reiterated in *Brown v. Commissioner of Correction & Superintendent, MCI- Walpole*. 394 Mass. 89 (1985). In *Brown*, a person convicted, upon District Court Complaints, of four counts of breaking & entering with intent to commit a felony, was confined to MCI-Walpole. The man was never indicted, simply convicted on District Court complaints, which was the basis of his successful objection to confinement in Walpole. It is significant that in *Brown*, the Commissioner argued that the *Jones* rule be limited to persons awaiting trial, an argument that was rejected by the Supreme Judicial Court. Mr. Tuttle is a person awaiting trial.

In 1971, the Attorney General was asked whether female prisoners awaiting trial could be kept at MCI-Framingham. (Chapter 125, Section 16 at that time mandated that female prisoners under sentence to a jail or house of correction would serve their sentences at MCI-Framingham.) The Attorney General's answer was no, relying on the plain language of Chapter 276, Section 42, which provides that persons not admitted to bail be committed to "jail for trial," and on Chapter 126, Section 4, which provides that "jails shall be used for the detention of persons charged with crime and committed for trial." *Opinions of The Attorney General, 1971, Page 104.*

Mr. Tuttle is a person charged with crime and committed for trial; he is not under sentence. There is one mechanism, and only one mechanism, by which a person awaiting trial may be transferred from a jail or house of correction to a correctional institution. That mechanism is found in Chapter 276, Section 52A. The entire section is set forth below:

> "Persons held in jail for trial may, with the approval of the district attorney and shall, *by order of a justice of the superior court*, be removed by the commissioner of correction to a jail in another county, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail whence they were removed. *In addition*, such persons, if they have been under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction to a correctional institution of the commonwealth, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail where they were awaiting trial. The proceedings for such removals shall be the same as for the removal of prisoners from one jail or house of correction to another. The cost of support of a person so removed shall be paid by the county whence he is originally removed."
>
> *Italics supplied.*
> *Added by St. 1943, c 131. Amended by St. 1971, c 592, s. 1; St. 1973, c 514.*

No person in Mr. Tuttle's position may be sent to prison without an order of a Superior Court Justice, following a hearing.

The requirement of an order from a Superior Court Justice is expressed in the first sentence of Section 52A. No person may be removed without such an order. While persons described in the second sentence of Section 52A potentially face removal to correctional institutions in addition to other jails or houses of correction, there is nothing in the statutory scheme that would suggest that such persons are not entitled to the protection that they will not be removed without written order of a Superior Court Justice. Indeed, the predicate to the possibility of removal to a correctional institute is that the person must have been convicted of a felony; clearly this must be demonstrated to the Superior Court Justice who will be asked to issue the order of removal, in a hearing, and given the statutory scheme, the burden is on a moving party to request such a hearing

before any person awaiting trial may be removed, especially when removal is sought to a correctional institution, a harsher place by far than the traditional, pre-trial, jail. Nothing in Section 52A authorizes anyone to remove a pre-trial prisoner without an order of a a justice of the Superior Court.

The absence of a specific repetition of the phrase "by order of a justice of the superior court" in the second sentence should not be read to imply that judicial intervention, while mandatory if removal is sought to a different jail, is not necessary to remove a person to a prison. It would defy common sense, case law, and every statutory scheme to interpret any statute to suggest that a person has less of a liberty interest before being sent to prison than to jail. The second sentence of Section 52A begins "in addition," and the better reading of the second sentence is that "such persons" are entitled to the protection of the requirement of an order from a Superior Court Justice, after hearing, but that "such persons," after a hearing, may be sent to correctional institutions to await trial, where persons without felony convictions may only be sent to other jails or houses of correction. The determination that a person has been previously been convicted of a felony would, there is no other interpretation available, be made by a Superior Court Justice, after a hearing, before he or she wrote any order removing the accused to a correctional institution. Mr. Tuttle has had no such hearing, and no such order has been executed, nor sought, not by the District Attorney, not by the Sheriff, not by the Commissioner of Corrections, not by anyone.

PROCEDURE

Under Chapter 126, Section 4, and Chapter 276, Section 42, there is a mandate that persons awaiting trial be held in a "jail or house of correction." Any attempt to hold a person such as Mr. Tuttle in a "correctional institution" must be initiated by an appropriate motion, following by a hearing in which it is established, to the satisfaction of a justice of the Superior Court, that the person sought to be removed has been convicted of a felony, and by a decision of a justice of the Superior Court, in his or her discretion, that removal to a correctional institution may occur.

Until and unless such a hearing is held, the Defendant, David Tuttle, may and should not be remanded to any correctional institution, let alone to MCI-Cedar Junction.

FEDERAL ASPECTS OF MR. TUTTLE'S INCARCERATION STATUS

There are also federal rights implicated in the situation where a person is incarcerated improperly while awaiting trial. A person awaiting trial has liberty interests under the Fifth Amendment, and the right to counsel under the Sixth Amendment, that distinguish his situation from that of a person under sentence, who is largely confined to his rights under the Eighth Amendment.

That a person awaiting trial has a greater interest in being near home than has a person under sentence was recognized in *Cobb v. Aytch*, 643 F2d 946 (3rd Circuit, 1981). *Cobb* was a Section 1983 class action on behalf of two classes of persons charged with crimes in Philadelphia, who were incarcerated away from Philadelphia in another part of Pennsylvania. One class was under sentence, the other awaiting trial. The Third Circuit held that the burden of justification on the part of the government was much higher with regard to the class awaiting trial.

Closer to home, the Second Circuit recognized that where a state by statute or regulation prescribes mandatory procedures to govern administrative segregation among persons incarcerated, any person so incarcerated has a liberty interest in remaining in the general prison population. *Covino v. Vermont Department of Corrections*, 933 F 2d 128 (Second Circuit, 1991). The liberty interest of Mr. Tuttle in being held at a jail or house of correction pending trial is regulated by Chapters 126 and 276, and Mr. Tuttle has the right to demand that the Commissioner of Correction, and the Hampden Sheriff, comply with existing laws governing his incarceration. In *Covino*, when the prison moved Mr. Covino from his single cell to accomodate a handicapped prisoner, he insisted he wanted any single cell rather than be in a double cell. Prison officials gave him a single cell, but the single cell was in a segregation unit, and no rules were followed before sending him to segregation! A federally cognizable violation of a civil right was also recognized in *McMillian v. Johnson*, 88 F 3rd 1554 (1996). There, an inmate awaiting trial was sent to await trial on Death Row!

Mr. Tuttle, awaiting trial and not under sentence, thus has federal constitutional rights at stake as well.

## REMEDY AND CONCLUSION

Defendant prays to remand to a House of Correction in the general vicinity of Hampden County, until and unless a Superior Court Justice, after hearing, permits removal by a written order of the Court, after an opportunity for Mr. Tuttle to be heard in opposition to any request to remove him to any correctional institution.

February 22, 2002

David Tuttle
By His Attorney

[signature]

Edward C. Bryant, Jr.
BBO #062130
1242 Main Street
Springfield, MA 01103-1953
(413) 737-8575

with families and friends to deal with the unexpected crisis–to get a lawyer, try to arrange bail, pay the rent, get children taken care of, communicate with employers, get the car keys into the family's possession, etc. The courts have not adopted this reasoning explicitly, but we think it may be persuasive in determining whether jail officials have "exaggerated their response"[21] with respect to visiting, telephone access, and other communications issues.

Detainees, like convicts, are entitled to meaningful access to the courts. However, small local jails may not need to maintain as extensive law libraries as large state prisons,[22] and some courts have held (incorrectly, in our view) that having a lawyer for one's pending criminal case is sufficient to guarantee court access.[23]

Crowding and other living conditions do not constitute punishment unless they inflict "genuine privations and hardship over an extended period of time."[24] Courts do not hesitate to intervene when jail conditions are shown to be inhumane.[25] Particularly oppressive conditions may constitute punishment even for short periods of time.[26]

21 Bell v. Wolfish, 441 U.S. at 548.

22 *See* Ch. III, § C.2.

23 *See* Ch. III, § C.2.

24 Bell v. Wolfish, 441 U.S. at 542; LaReau v. Manson, 651 F.2d 96, 104 (2d Cir. 1981). These living conditions issues are discussed in detail in Ch. II.

25 *See, e.g.*, Jones v. Diamond, 636 F.2d 1364, 1373-74 (5th Cir.) (en banc), *cert. dismissed*, 453 U.S. 950 (1981); Newkirk v. Sheers, 834 F.Supp. 772, 783 (E.D.Pa. 1993); Young v. Keohane, 809 F.Supp. 1185, 1195 (M.D.Pa. 1992); Carver v. Knox County, Tenn., 753 F.Supp. 1370, 1386-94 (E.D.Tenn. 1989), *remanded for reconsideration*, 887 F.2d 1287 (6th Cir. 1989), *adhered to on remand*, 753 F.Supp. 1398 (E.D.Tenn. 1990) and *cert. denied sub nom.* Knox County v. McWherter, 110 S.Ct. 1949 (1990); Vazquez v. Carver, 729 F.Supp. 1063, 1068-70 (E.D.Pa. 1989); Gilland v. Owens, 718 F.Supp. 665, 685-88 (W.D.Tenn. 1989); Inmates of Allegheny County v. Wecht, 699 F.Supp. 1137, 1143-47 (W.D.Pa. 1988), *aff'd*, 874 F.2d 147, 153-54 (3d Cir. 1989), *vacated and remanded on other grounds*, 110 S.Ct. 355 (1989), *vacated as moot*, 893 F.2d 147 (3d Cir. 1990); Fambro v. Fulton County, Ga., 713 F.Supp. 1426, 1430-32 (N.D.Ga. 1989); Albro v. Onondaga County, 681 F.Supp. 991, 994-97 (N.D.N.Y. 1988); Morales Feliciano v. Hernandez Colon, 697 F.Supp. 37, 46-48 (D.P.R. 1988); Albro v. County of Onondaga, N.Y., 627 F.Supp. 1280, 1285-87 (N.D.N.Y. 1986); Reece v. Gragg, 650 F.Supp. 1297, 1301-05 (D.Kan. 1986); McMurry v. Phelps, 533 F.Supp. 742, 761-63 (W.D.La. 1982); Dawson v. Kendrick, 527 F.Supp. 1252, 1287-1315 (S.D.W.Va. 1981); Hutchings v. Corum, 501 F.Supp. 1276, 1293-95 (W.D.Mo. 1980); Heitman v. Gabriel, 524 F.Supp. 622, 624-29 (W.D.Mo. 1981); *see also* Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) (excessive lock-in and sleeping on a floor mattress stated a claim of unlawful punishment as to a detainee held in a state prison); Lock v. Jenkins, 641 F.2d at 492-94 (excessive lock-in times for detainees held in a state prison constituted punishment).

26 Anela v. City of Wildwood, 790 F.2d 1063, 1069 (3d Cir. 1986) (overnight confinement in jail without drinking water, food or sleeping facilities of persons who had done nothing but play their radio too loud in their home constituted "punishment"), *cert. denied*, 479 U.S. 949 (1986); Goodson v. City of Atlanta, 763 F.2d 1381, 1387 (11th Cir.) (upholding damage award for three-day period of "inedible food, no blankets or bedding, no sanitation, inadequate medical care, no shelter from the elements other than a concrete cell with broken windows permitting the passage of cold air, together with such unsanitary conditions and deprivation of rights as to endanger his health"), *rehearing denied*, 770 F.2d 175 (11th Cir. 1985); Benjamin v. Sielaff, 752 F.Supp. 140, 141 n.

However, courts have not spelled out how the *Wolfish* punishment andard for detainees differs from the Eighth Amendment standard, hich prohibits "unquestioned and serious deprivations of basic human eeds" or denial of the "minimal civilized measure of life's necessities."[27]

It is ironic that detainees in local jails who have not been convicted of ything are often treated more harshly than state prisoners who have en convicted of serious crimes. Some courts have held that such treatent violates detainees' rights.[28] Others, however, have held that the onstitution is not violated by harsher treatment of detainees if they are ld by a different agency of government from state prisoners,[29] or that e length of stay or other aspects of confinement are sufficiently different justify these differences in treatment.[30]

3 (S.D.N.Y. 1990) (confining detainees in non-housing areas and in areas without toilets was unconstitutional); Willis v. Bell, 726 F.Supp. 1118, 1122 (N.D.Ill. 1989) (allegation of 12 hours without food or access to a washroom after arrest stated a claim under the punishment standard if done intentionally).

Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981). This standard is discussed in Ch. II, § A.1.

One court has held that in an overcrowded jail, detainees could be double-celled for 15 days while convicts could be double-celled for 30 days. LaReau v. Manson, 651 F.2d 96, 105, 109 (2d Cir. 1981).

Another court has held that the legal standards are the same for detainees and convicts in conditions cases because to hold otherwise "would require courts to evaluate the details of slight differences in conditions" and would get courts involved in "minutiae" in jails that house both convicts and detainees. Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986); *accord*, Starks v. Bowles, 682 F.Supp. 891, 893 (N.D.Tex. 1988), *aff'd*, 851 F.2d 1419 (5th Cir. 1988). We think *Hamm* is wrong. The Supreme Court has not only stated different standards for the two groups; it has also recently emphasized, in establishing the legal rules for the use of force for arrestees, detainees, and convicts, that each group is protected by a different constitutional provision and has created different legal standards for each. Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989). We think the same approach is applicable to conditions cases.

*See, e.g.*, Rhem v. Malcolm, 507 F.2d at 336; Hamilton v. Love, 328 F.Supp. 1182, 1191 (E.D.Ark. 1971). One court has held that leaving convicts in local jails because of lack of space may deny them the equal protection of the laws. Hill v. Hutto, 537 F.Supp. 1185, 1189 (E.D.Va. 1982) (finding equal protection violation where state prisoners were backed up in local jail because of lack of state prison space). The Equal Protection Clause is discussed in Ch. V.

Dawson v. Kendrick, 527 F.Supp. at 1286. If convicts and detainees *are* held by the same agency of government, such differences do deny equal protection. Lock v. Jenkins, 641 F.2d at 497; Young v. Keohane, 809 F.Supp. at 1194.

Feeley v. Sampson, 570 F.2d 364, 371 (1st Cir. 1978).

Box C-Library

with families and friends to deal with the unexpected crisis–to get a lawyer, try to arrange bail, pay the rent, get children taken care of, communicate with employers, get the car keys into the family's possession, etc. The courts have not adopted this reasoning explicitly, but we think it may be persuasive in determining whether jail officials have "exaggerated their response"[21] with respect to visiting, telephone access, and other communications issues.

Detainees, like convicts, are entitled to meaningful access to the courts. However, small local jails may not need to maintain as extensive law libraries as large state prisons,[22] and some courts have held (incorrectly, in our view) that having a lawyer for one's pending criminal case is sufficient to guarantee court access.[23]

Crowding and other living conditions do not constitute punishment unless they inflict "genuine privations and hardship over an extended period of time."[24] Courts do not hesitate to intervene when jail conditions are shown to be inhumane.[25] Particularly oppressive conditions may constitute punishment even for short periods of time.[26]

21 Bell v. Wolfish, 441 U.S. at 548.

22 *See* Ch. III, § C.2.

23 *See* Ch. III, § C.2.

24 Bell v. Wolfish, 441 U.S. at 542; LaReau v. Manson, 651 F.2d 96, 104 (2d Cir. 1981). These living conditions issues are discussed in detail in Ch. II.

25 *See, e.g.*, Jones v. Diamond, 636 F.2d 1364, 1373-74 (5th Cir.) (en banc), *cert. dismissed*, 453 U.S. 950 (1981); Newkirk v. Sheers, 834 F.Supp. 772, 783 (E.D.Pa. 1993); Young v. Keohane, 809 F.Supp. 1185, 1195 (M.D.Pa. 1992); Carver v. Knox County, Tenn., 753 F.Supp. 1370, 1386-94 (E.D.Tenn. 1989), *remanded for reconsideration*, 887 F.2d 1287 (6th Cir. 1989), *adhered to on remand*, 753 F.Supp. 1398 (E.D.Tenn. 1990) and *cert. denied sub nom.* Knox County v. McWherter, 110 S.Ct. 1949 (1990); Vazquez v. Carver, 729 F.Supp. 1063, 1068-70 (E.D.Pa. 1989); Gilland v. Owens, 718 F.Supp. 665, 685-88 (W.D.Tenn. 1989); Inmates of Allegheny County v. Wecht, 699 F.Supp. 1137, 1143-47 (W.D.Pa. 1988), *aff'd*, 874 F.2d 147, 153-54 (3d Cir. 1989), *vacated and remanded on other grounds*, 110 S.Ct. 355 (1989), *vacated as moot*, 893 F.2d 147 (3d Cir. 1990); Fambro v. Fulton County, Ga., 713 F.Supp. 1426, 1430-32 (N.D.Ga. 1989); Albro v. Onondaga County, 681 F.Supp. 991, 994-97 (N.D.N.Y. 1988); Morales Feliciano v. Hernandez Colon, 697 F.Supp. 37, 46-48 (D.P.R. 1988); Albro v. County of Onondaga, N.Y., 627 F.Supp. 1280, 1285-87 (N.D.N.Y. 1986); Reece v. Gragg, 650 F.Supp. 1297, 1301-05 (D.Kan. 1986); McMurry v. Phelps, 533 F.Supp. 742, 761-63 (W.D.La. 1982); Dawson v. Kendrick, 527 F.Supp. 1252, 1287-1315 (S.D.W.Va. 1981); Hutchings v. Corum, 501 F.Supp. 1276, 1293-95 (W.D.Mo. 1980); Heitman v. Gabriel, 524 F.Supp. 622, 624-29 (W.D.Mo. 1981); *see also* Lyons v. Powell, 838 F.2d 28, 31 (1st Cir. 1988) (excessive lock-in and sleeping on a floor mattress stated a claim of unlawful punishment as to a detainee held in a state prison); Lock v. Jenkins, 641 F.2d at 492-94 (excessive lock-in times for detainees held in a state prison constituted punishment).

26 Anela v. City of Wildwood, 790 F.2d 1063, 1069 (3d Cir. 1986) (overnight confinement in jail without drinking water, food or sleeping facilities of persons who had done nothing but play their radio too loud in their home constituted "punishment"), *cert. denied*, 479 U.S. 949 (1986); Goodson v. City of Atlanta, 763 F.2d 1381, 1387 (11th Cir.) (upholding damage award for three-day period of "inedible food, no blankets or bedding, no sanitation, inadequate medical care, no shelter from the elements other than a concrete cell with broken windows permitting the passage of cold air, together with such unsanitary conditions and deprivation of rights as to endanger his health"), *rehearing denied*, 770 F.2d 175 (11th Cir. 1985); Benjamin v. Sielaff, 752 F.Supp. 140, 141 n