UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ERIC KELLEY,   )
           Plaintiff,   )
              )
              )   C.A. No. 04-11192-RCL NMG
              )
v.            )
              )   PLAINTIFFS MOTION FOR
SHERIFF DiPAOLO, et al   )   AN ORDER THAT A HEALTH
           Defendants.   )   CARE (TRIBUNAL) HAS A
              )   FACT FINDING COMMITTEE.

FILED
CLERKS OFFICE
2005 FEB 23 P 12: 51
U.S. DISTRICT COURT
DISTRICT OF MASS

Now Comes, the plaintiff in the above matter, and respectfully requests that this Honorable Court ORDER that a health care tribunal is comprised and investigates the the medical facility and medical provisions at the defendants jail.

IT WAS THE DEFENDANTS THAT SUGGESTED THAT THIS COURSE OF ACTION IS A PREREQUSITE IN THIS MATTER. (see defendants defenses).

Plaintiff requests that a physician licensed to practice in medicine (RECOMMENDED BY MASSACHUSETTS LEGAL SERVICES) 8 Winter St. Boston, view the jail with the plaintiff and other (INTERESTED PARTIES) see affidavits.

This request is governed by rules outlined M.G.L.A. 231 §60

Respectfully:
Eric Kelley
Eric Kelley (Pro Se)
269 Treble Cove Rd.
Billerica, Mass. 01862

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ERIC KELLEY
              Plaintiff,                )
                                        )
                                        )
    v.                                  )   C.A. No. 04-11192-RCL.
                                        )
                                        )   MEMORANDUM OF LAW IN SUPPORT
SHERIFF DiPAOLO, et al                  )   MOTION FOR A MEDICAL TRIBUNAL.
              Defendants.               )

The constraints imposed on a plaintiff under this section by the necessity of either prevailing before the tribunal or filing a bond for the defendant's costs and attorney's fees are state-created limitations on the plaintiff's right to recover that a federal court must apply in diversity actions. Feinstein v. Massachusetts General Hospital, C.A.1 (Mass.)1981, 643 F.2d 880.

State medical malpractice claim that was subject to court's supplemental jurisdiction in civil rights action was required to be referred to state medical malpractice tribunal, pursuant to state law. Turner v. Sullivan, D.Mass.1996, 937 F.Supp. 79.

This section authorizing only the appellate court to review claims of error in decisions of medical malpractice tribunals unless bond is filed so that case may proceed to trial was procedural rather than substantive rule of law required to be followed in federal court, and thus claim of error in decision of medical malpractice tribunal could be heard by district court. Pallazola v. Rucker, D.C.Mass.1984, 602 F.Supp. 459.

This section, which required that every action for malpractice be referred to medical malpractice tribunal, which merely provided a screening device to discourage frivolous claims and did not result in decision as to liability or damages, and which therefore did not threaten federal court's original jurisdiction and jury's role, imposed substantive rule of law that had to be applied in federal diversity action brought against hospital to recover for injuries allegedly caused by its negligence. Feinstein v. Massachusetts General Hospital, D.C.Mass.1979, 489 F.Supp. 419, affirmed 643 F.2d 880.

Where this section created substantive liability for costs in the amount of the bond required to be filed by a plaintiff who institutes a medical malpractice action, fails to convince tribunal that there is legitimate question of liability, and then unsuccessfully pursues claim or claims to final judgment, where reference to medical malpractice tribunal of case instituted in federal court would prevent forum shopping, would avoid unfairness in administration of laws, and would not contravene any federal policy, and where state policy of discouraging frivolous claims would be undermined if federal court did not apply this section, substantive right created by this section had to be recognized by federal court in diversity action. Byrnes v. Kirby, D.C.Mass.1978, 453 F.Supp. 1014.

Medical malpractice plaintiff's motion seeking discovery in the federal court was premature, in that plaintiff was required under this section to present his offer of proof to medical malpractice tribunal to which complaint had been referred, with tribunal to rule as to whether plaintiff presented legitimate claim appropriate for federal review; under this section, appropriate av-

### FEDERAL COURT PROCEEDINGS

The Rules of Decision Act and the Erie doctrine require a federal district court sitting in diversity to refer "an action for malpractice, error or mistake against a provider of health care" arising under this section to a medical malpractice tribunal and, further, to dismiss action when, after hearing, tribunal determines that plaintiff's evidence is insufficient to raise a legitimate claim of liability and plaintiff failed to file a bond within 30 days as required by this section. Feinstein v. Massachusetts General Hospital, C.A.1 (Mass.)1981, 643 F.2d 880.

Requiring malpractice actions brought in the federal court to be heard first by a tribunal operating as an adjunct of the state superior court does not deprive out-of-state litigants of the benefit of federal diversity jurisdiction. Feinstein v. Massachusetts General Hospital, C.A.1 (Mass.)1981, 643 F.2d 880.

Respectfully,
Eric Kelley

CERTIFICATE OF SERVICE

I sent a copy to Atty Desmond on 2/20/05 via regular mail
Eric Kelley

45. Defendants deny all the allegations contained in Paragraph # 45 and call on Plaintiff to prove.

46. Defendants deny all the allegations contained in Paragraph # 46 and call on Plaintiff to prove.

47. Defendants deny all the allegations contained in Paragraph # 47 and call on Plaintiff to prove.

48. Defendants deny all the allegations contained in Paragraph # 48 and call on Plaintiff to prove.

49. Defendants deny all the allegations contained in Paragraph # 49 and call on Plaintiff to prove.

50. Defendants deny all the allegations contained in Paragraph # 50 and call on Plaintiff to prove.

## DEFENSES

1. Plaintiff's has failed to exhaust his administrative remedies pursuant to the Prisoner Litigation Reform Act (42 U.S.C. 1997e(a)) and Porter v. Nussle, 122 S. Ct. 983, 988 (2002).

2. Plaintiff's claims are barred by applicable statutes of limitations.

3. Plaintiff's claims are barred by sovereign immunity and qualified immunity.

4. Plaintiff's complaint fails to state claims upon which relief could be granted pursuant to F. R. Civ. P. 12 (b) (6).

5. Plaintiff has failed to adhere to the requirements of G. L. c. 258, §§ 2, 4 & 10.

6. Defendants at all times complied with the requirements of Lewis v. Casey, 116 S. Ct. 2174, (1996), Bounds v. Smith, 430 U.S. 817 (1977) and other relevant cases.

7. Plaintiff's claims of inadequate medical care are subject to review by a medical malpractice tribunal pursuant to G. L. c. 231, § 60B.

8. Plaintiff's claims may potentially implicate the political question doctrine.

9. Plaintiff lacks legal standing to assert his claims.

10. Plaintiff has no proof of legal causation or requisite legal harm to avid dismissal of his complaint.

crite-
; VII
Cells
other
ming
; rule
en to
staff.

ienal
onal.
other
o be

titute-
te to
nple
onal

:0). In
ut due
overn-
timate
y and
hts of

on did
order
inflic-
:t that
. The
e part
h Cir.
imate
elimi-
1 pre-
ion of
ite an
1982)
biting

ites v.

Wal-

While overcrowding itself may not be a violation of the Eighth Amendment, overcrowding can, under certain circumstances, cause unsanitary conditions or high levels of violence, which violate the Eighth Amendment.[55]

## § 12.6 Conditions of Confinement

Courts have a duty to protect inmates from unlawful and onerous treatment of a nature that, in itself, adds punitive measures to those legally meted out by a court.[56] While the federal courts continue to recognize the broad discretion that state prison officials require in order to maintain orderly and secure institutions, constitutional deprivations of such a magnitude as to allow the maintenance of facilities that are wholly unfit for human habitation cannot be countenanced. The courts are under a duty to, and will, intervene to protect incarcerated persons from such infringements of their constitutional rights.[57] However, federal courts are limited in their intervention into the operations of institutions to the issue of whether there are constitutional violations. In *Bell v. Wolfish*,[58] the Supreme Court said:

> . . . There was a time not too long ago when the federal judiciary took a completely "hands-off" approach to the problem of prison administration. In recent years, however, these courts largely have discarded this "hands-off" attitude and have waded into this complex arena. The deplorable conditions and draconian restrictions of some of our Nation's prisons are too well known to require recounting here, and the federal courts rightly have condemned these sordid aspects of our prison systems. But many of these same courts have, in the name of the Constitution, become increasingly enmeshed in the minutiae of prison operations. Judges, after all, are human. They, no less than others in our society, have a natural tendency to believe that their individual solutions to often intractable problems are better and more workable than those of the persons who are actually charged with and trained in the running of the particular institution under examination. But under the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan. This does not mean that constitutional rights are not to be scrupulously observed. It does mean, however, that the inquiry of federal courts into prison management must be limited to the issue of whether a particular system violates any prohibition of the Constitution, or in the case of a federal prison, a statute. The wide range of "judgment calls" that meet constitutional and statutory requirement[s] are confided to officials outside of the Judicial Branch of Government.

---

[55] *See* Hoptowit v. Ray, 682 F.2d 1237 (9th Cir. 1982).
[56] Stickney v. List, 519 F. Supp 617 (D. Nev. 1981).
[57] Jordan v. Arnold, 472 F. Supp. 265 (M.D. Pa. 1979); Taylor v. Sterrett, 600 F.2d 1135 (5th Cir. 1979); Robson v. Biester, 420 A.2d 9 (Pa. Commw. Ct. 1980); James v. Wallace, 406 F. Supp. 318 (M.D. Ala. 1976).
[58] 441 U.S. 520 (1979).

Similarly, in *Rhodes v. Chapman*,[59] the Supreme Court reinforced its holding in *Bell v. Wolfish*, and admonished the lower federal courts that in determining whether prison conditions constitute cruel and unusual punishment under federal standards, federal courts cannot assume that state legislatures and prison officials are insensitive to the requirements of the Constitution, or to the sociological problems of how best to achieve the goals of the prison in the criminal justice system.

Although federal courts may lack the power to order public or governmental entities, which represent the public, to expend funds to build new facilities, they do have the power to order the release of persons who are being held under conditions that deprive them of rights guaranteed to them by the federal Constitution, unless such conditions are corrected within a reasonable time.[60] Some courts have gone so far with the conditions-of-confinement argument that they have allowed escapee defendants to raise the criminal defenses of necessity and duress to criminal charges of prison escape. Such cases usually involve threats of homosexual rape as the mitigating condition of confinement.

Most aspects of prison life are dictated by the needs of institutionalization. Prison authorities have wide discretion to regulate or prohibit inmates' comforts, including the keeping of pets,[61] permissible clothing,[62] plumbing,[63] and checking accounts.[64]

Inmates who complain of their conditions of confinement, but who are transferred to other facilities before their complaints are adjudicated, may have their complaints dismissed as moot.[65]

As a result of the increase in conditions of confinement suits, the United States Supreme Court has added to the obstacles that prisoners face in filing such suits.

In *Wilson v. Seiter*,[66] a civil rights action was filed against an Ohio facility where the prisoner was housed. The complaint alleged overcrowding, mixing of healthy inmates with physically and mentally ill inmates, excessive noise, inadequate heating and cooling, and lack of sanitation.

In such cases, prisoners must prove a culpable mental state on the part of prison officials. Such proof is an essential element in a claim that prison conditions violate the Eighth Amendment's prohibition of cruel and unusual punishment. *Estelle v. Gamble*,[67] *Rhodes v. Chapman*,[68] and *Whitley v. Albers*[69] were observed by the

---

[59] 452 U.S. 337 (1981).
[60] Clay v. Miller, 626 F.2d 345 (4th Cir. 1980); Battle v. Anderson, 594 F.2d 786 (10th Cir. 1979); James v. Wallace, 406 F. Supp. 318 (M.D. Ala. 1976).
[61] Sparks v. Fuller, 506 F.2d 1238 (1st Cir. 1974).
[62] *Id.* at 1239; *see also*, State v. Rouse, 629 P.2d 167 (Kan. 1981).
[63] Mims v. Shapp, 399 F. Supp. 818 (W.D. Pa. 1975), *was vacated and remanded on appeal*. Mims v. Shapp, 541 F.2d 415 (2d Cir. 1976). The court of appeals held that the inmates' affidavits sufficiently alleged personal bias of the judge and that the district judge erred in denying the inmates' recusal motion; *see also* Freeman v. Trudell, 497 F. Supp. 481 (E.D. Mich. 1980) and Jefferson v. Douglas, 493 F. Supp. 43 (D. Okla. 1979). (Whether a prisoner has a proper diet is a question wholly within the discretion of the prison administration). Herring v. Superintendent, Danville City Jail, 387 F. Supp. 410 (W.D. Va. 1974).
[64] Nix v. Paderick, 407 F. Supp. 844 (E.D. Va. 1976).
[65] Strader v. Blalock, 405 F. Supp. 1155 (W.D. Va. 1975).
[66] 501 U.S. 294 (1991).
[67] 429 U.S. 97 (1976).
[68] 452 U.S. 337 (1981).
[69] 475 U.S. 312 (1986).

Dear Clerk Morse

please file this and insect I don't know how many more will have to send before the court intervenes? Eric Kelley (Pro se)

CERTIFICATE OF SERVICE

I sent notice to deft(s) counsel regular mail that another insect was sent on 3/1/05 (EK)

[EXHIBIT "A" (2)
notification]

Affidavit

I Eric Kelley awoke on 3/1/05 at aprox. 6:20 A.M. this enclosed ⟨huge cockroach⟩ was literally in my bed I thought my leg was itchy and I discovered this bug. I was horrified and my skin was crawling and my hair standing from trauma.
Under the penalties of Perjury
Eric Kelley