UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-11192-NMG

Eric Kelley, )
Plaintiff, Pro Se )
)
v. )
)
Sheriff DiPaola, Superintendent Norton, )
Officer Thurman Hall, Sgt. Joseph Flynn, )
Billerica House of Correction Legal Dept., )
Attorney Lee Gartenberg, Attorney John )
Goggin, Commissioner of the Massachusetts )
Board of Health, Commissioner of Public )
Safety, and Billerica Board of Health, )
Defendants. )

Memorandum of Law
{Same Conditions}
Condemnation.

*Conclusions of Law*

During the past few years, due largely to the courage of young poverty-program lawyers, the soul-chilling inhumanity of conditions in American prisons has been thrust upon the judicial conscience. The traditional "hands-off" doctrine, holding that federal courts are powerless to interfere with the operation of state and county correctional institutions, see Eaton v. Bibb, 7 Cir., 1955, 217 F.2d 446, 448, cert. den. 1955, 350 U.S. 915, 76 S.Ct. 199, 100 L.Ed. 802, has slowly yielded to the broader principle stated by Judge Murrah in Stapleton v. Mitchell, D.Kan.1945, 60 F.Supp. 51, 55, "We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication ...." Twice last year the Supreme Court reversed lower federal court decisions dismissing state prisoner complaints because they were thought by the lower courts to be in the area that should be left "to the sound discretion of prison administration" and ordered that the complaints be heard on the merits. Haines v. Kerner, 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 and Cruz v. Beto, 1972, 405 U.S. 319 at 321, 92 S.Ct. 1079, at 1081, 31 L.Ed.2d 263, commenting *per curiam* in the latter case, "Federal courts sit not to supervise

. The defendants' claims of qualified immunity, for example, are based in part on ~~Gerakaris's~~ perceived inability to prove facts, such as the "intentionality" of the officers' conduct and the existence of an "affirmative link" between the supposedly inhumane jail conditions and the actions of defendants ~~Reardon~~ and ~~Coppola~~. At this early stage there is no question but that the allegations of the Amended Complaint are sufficient to describe conduct, if proved, that "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have [then] known." See *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

*These are just a few of the same barbaric conditions and exact similarities of the former Suffolk Jail and current Billerica H.O.C.*

, Cell size is approximately 8' wide x 11' long x 10' high, and was designed and constructed for single occupancy. Nearly all of the usable floor space in cells is taken up by two iron-slatted cots which have no springs, are covered by old, worn and often soiled mattresses which have no protective covers and are in deplorable and unhealthy condition. The area between the cots is not sufficient to allow two men to pass each other. It is impossible for two men to occupy one of these cells without regular, inadvertent physical contact inevitably exacerbating tensions and creating interpersonal friction.

*☆ note the cells in Billerica are much smaller then the above and are (have been) continue to be double bunked.*

*680 3. The plumbing system is antiquated, inadequate and impossible to repair economically and, as testified by ~~James V. Bennett~~, "positively repulsive." Ruptures, leaks and flooding frequently occur in "the flats" (an area on the bottom level of the east wing where inmates eat their meals) and in the pump room (sub-basement) beneath the jail. There are major leaks in the boiler room ceiling. There are leaky ceiling pipes (both for water and heat) in the kitchen which sometimes drip directly onto food about to be served. Toilets and sinks in the cells are corroded, filth-encrusted and often a serious health hazard. Toilet bowls are not covered and many have no seats. The water in the toilets is at a level with the bottom of the bowl; the water does not partially fill the bowl as in modern public health code toilets. Flush valves in the toilet units are old and in need of repair or replacement, causing the toilets and sinks to get plugged up and to overflow frequently. (FN5) Usually when this happens, the cells must be closed but some cells remain in use despite leaking toilets and sinks. A fecal smell emanates from many toilets. This attracts bugs and other insects. There is no hot water in the cells; in the shower room, on some morning there is no hot water at all, while on other days the water is scalding, because the cold water pressure is low.

4. The jail as a whole poses a serious fire hazard. In case of fire, removal of inmates can only be accomplished by unlocking each cell door individually. The only fire escape in the entire jail consists of a single steel ladder running from the fifth tier down to the first tier of the east wing. The ladder is enclosed in a steel mesh shaft and exits onto the corridor at the far end of the east wing. Since there is only one staircase per cell block, at the near end, i. e., closest to the rotunda, officers must unlock all doors on each tier, then retrace their steps in order to descend to the next lower tier. Most of the electrical current in the jail is direct current. It is necessary each year to repair, overhaul and convert several direct current motors at great expense. At present there is no emergency back-up electrical generator. In the Sheriff's 1971 Supplementary Budget Request No. 59 (p. 4, 3/4/71), it is stated that "in the event of an electrical power failure at the jail due to fire or other catastrophe, the consequences will most assuredly be disastrous because of the inexcusable lack of an emergency power generating system." (FN6) *plaintiff has submitted a huge*
*→ Roaches.*

x5  5. Mosquitoes are a serious year-round problem. Roaches and waterbugs are prevalent. Rats are a serious, continuing problem. ~~There is a recurrent problem of pigeons roosting inside the main jail, although programs of extermination and window repair periodically eliminate them\~~

*Truthfully*
*Eric Kelley*