United States District
Court of Massachusetts
< 1st. Circuit >

Eric Kelley

V.

Sheriff DiPaulo et. al.

# C04-11192-NMG

Plaintiffs Motion
For A State-wide
Injunction (ruling)
To Prohibit Pre-
trial detainees being
placed in "infamous
"state Prisons"

Plaintiff requests that this Honorable
Court Order and mandate that the
defendants (state agents) are Prohibited
from Placing (this Plaintiff) and all
other Pre-trial detainees (awaiting trial)
from being housed in "infamous" state
prisons" (Punishment settings).

Attached is Memorandum, History
and argument.

Eric Kelley (Pro'se)

a)

# Procedural History

In the early 70's the State and federal court. found that the conditions of confinement at the Suffolk County jail "(charles St. Jail)" were so violative that double bunking could not be enforced. (and later the jail was condemned.) (See: <u>Suffolk Inmates V. Eisenstadt</u> and all related decisions) # 71-162-G 5/20/73 USDC 1st.cir. *

* The County was admonished to send detainees awaiting trial to MCI Concord (a reformatory Prison) if the inmate had done state time before.

Hearings of determination were held by "order of a Superior Court Judge, and the "request of the District Attorney" under MGLA 276 Section 52A *

* see Exhibit A'

The <u>Commissioner of Correction</u> (opposed) such placement of pretrial detainees in Concord (or <u>any</u> 'State Prison') based on Due Process of law and countless constitutional Protections. The court identified the 'validity' of the commissioners opposition but temporarily allowed the placement of pretrial detainees in MCI Concord (reformatory setting) until "rectification and /or a new jail is constructed "....

The measures taken by the court were temporary and done for security and financial considerations. There was no alternative placement, therefore it was temporarily sound and justifiable.

## Current Actions

The defendants in this matter,
and their state counterparts
have miserably violated the
courts temporary ordinance
and the language of ch. 276 52A

Since 1987 (or so) Middlesex
Sheriff and Suffolk County Sheriff
take pretrial detainees that formerly
have done state Prison time, and
bring them to various state Prisons
(not just MCI Concord) but MCI
Cedar Junction and MCI Sousa Baronski
< maxium security Prisons > at the
time of this writing, Plaintiff
is in the states highest secure
medium / maxium OCCC
while awaiting trial, as a Pro'so
Criminal defendant. (who needs library access)

Pg #5 * Denial of his right to prepare a defense.
In his criminal matter (Plaintiff is Pro Se)

Plaintiff filed state and federal Court Pleadings, not to be placed in a state Prison while awaiting trial. (see docket 03-10726) Suffolk

The Suffolk Counties Sheriffs Office. in unison with these defendants sent advocates to argue that plaintiff should be placed in the (Concord Prison)

Judge Carol Ball held said hearing on/about March 29th.2005.

Because the defendants ensured Constitutional and physical Protections and adequate law * library access for this plaintiff who is Pro Se in his criminal matter.* Judge Ball made the following decree:

* those protections were not met.

"If I do it for you Mr. Kelley, I'd have to do it for everyone"

The Judges decision was rendered on financial concerns, the rectification of law that would result in an "Exodus" of liberated 52A detainees State wide. No Principles of law were discussed by the defendants or her Honor. Only this plaintiff set forth grounds that were not opposed, contested or disputed by <any> Present Parties. that being: The Judge, A.D.A defendants counsel.

*note (Kelley had Stand-by counsel Atty. Buck) and Atty. Eva Clark "friend of the court" Present on his behalf.

Pg #7

Judge Ball Allowed "Placement in MCI Concord" but the defendants and Co-horts placed him in OCCC (Maxium security) and mandated further placement in SBCC or MCI cedar Junction < the state Prison systems highest security Prisons >.

Because of the Plaintiffs legal Knowledge and limited ability to Plead, he was at least given the bare requirements of Ch. 276 sect. 52A (a hearing) but countless other detainees, with no advocacy or legal Knowledge are being and have been violated. (they received no hearings)

* note MCLS / Atty walker Atty. Petit support the defendants and the [State] Kelley seeks to have the U.S subcomittee and other administrations review them for conflict of interest.

# Analysis / Memorandum
## Argument
### (consolidated)

An Injunction (ORDER) is necessitated;

Inmates (detainees) have and will continue to suffer irreparable harm.

Some detainees have been beaten, stabbed and seriously sexually accousted when (mingling and living in the same Population as Convicted felons).

The injury outweighs the harm if not granted.

At some level (USDC Appeal or U.S. Supreame) Plaintiff will suceed on the merits of this argument.

Pg 9)

An injunction would not adversly affect Public interest, it would only ensure Public Safety. (detainees are <u>citizens</u> with a Presumption of innosence).

See:

<u>Planned Parenthood v. Bellotti 641 f2d. 1006. 10009 (1st. Cir. 1981)</u>

<u>Weaver v. Henderson 984 f2d. 11 (1993 1st. Cir)</u>

No other federal Jurisdiction in the United States allows Pre-trial detainees to be housed and interacted with convicted felons. In a "Punishment Setting"

"Due Process requires that a Pre-trial detainee not be "Punished"

See: <u>Bell v. Wolfish 99 S.ct. 1861 (1979)</u>

Pg #10)

There is a "distinction"
that the court recognizes
under the 8th Amend.

See: Ingraham V. ~~Wright~~ Wright
430 U.S. 651-672 n. 40, 97 S.Ct.
1401-1413 n. 40, 51 L.Ed.2d. 711
(1977)

" With respect to Pre-trial
detainees", the court held that
because they are " presumed to be
innocent and held only to ensure
their presence at trial, any deprivation
or restriction of rights of confinement
(consistant with Punishment of convicted
felons) alone, must be justified
by compelling necessity."

Quoted See: Detainees of Brooklyn
V. Malcolm 520 F2d. 392, 397 (CA2 1975)

also: Wolfish V. Levi 439 F.Supp
~~392, 397 (CA2 1975)~~ 114, 124 (1977)

pg #11)

"To house an inferior minority of persons amounts to Cruel & Unusual Punishment." See:

Wolfish v. U.S. 428 F Supp. 333, 339 (1977)

These types of action "further Violate Admin. Procedure Act"(APA)

The Presumption of Innocence Rule, has been modernized and made much more stringent to support founding rulings.

See: Campbell v. McGruder 188 U.S App. 258, 266, 580 F2d. 521, 529 (1978)

Feeley v. Sampson 570 F2d. 1077 1080 n ⊥ (CA3 1976)

pg #12

The Bell. V. Wolfish standard records a historical challange.

Bell V. Wolfish 441 U.S. 520 535, 99 S Ct. 1861, 1872 60 L Ed 2d 447 (1979)

The ruling "Screams Volumes" that detainees can not be Subjected to `Punishment´

Placement in a State Prison (which was designed and constructed for the Purpose of <u>punishment</u>) while detainees are "far from home" when their county jails have room) Serve no legitimate governmental objective and amounts to Punishment See: Kennedy v. Mendoza 372 U.S. 144 83. SCt. 554, 9 L Ed. 2d 644 (1963)

13)

# Legal Conclusion

In <u>Brown v. Comm. 394 Mass.</u>
<u>89 and 474 NE2d. 1059</u>

The court ruled that the state can not house even a ⟨<u>convicted</u>⟩ District Court sentenced inmate to anywhere other than (Concord) So how can an unconvicted pretrial detainee be lawfully placed in an "infamous" setting / prison.

The gist of the "Brown v. Comm." case is found **in the 4th.** paragraph

" Punishment in a state prison is an infamous punishment and <u>CAN NOT</u> be imposed without ⟨BOTH⟩ an indictment and TRIAL BY JURY"

Id. at 349

14)

Therefore, a Pretrial detainees confinement in Concord (no longer a reformatory Prison)

highest medium) Old Colony Correctional Center (OCCC)

maximum) MCI Cedar Junction (Walpole)

maximum) Sousa-Baranowski Corr. Center (SBCC)

is Sullogi'stcally a Punishment that violates the very framework of incarceration outlined in Jones V. Robbins, 8 Gray 329 (1857)

All in violation of Article 12.

for these reasons < Every > Pretrial detainee in a State Prison, having not been adjudged guilty, must be remanded back to their respective county jails to await trial. per. order of this Honorable Court

# Punishment " Standard

pg #15⟩

" Article 12 prohibits " placing
a criminal defendant in State prison
without " (indictment & conviction ) - "

" To transfer a criminal defendant
to MCI Walpole - (Shirley maxium,
old Colony Super medium) - "at a date
⟨Subsequent⟩ TO SENTENCING
would Seriously [394 Mass. 93]
undermind the "Protection afforded
by Article 12 "

See: Brown v. Comm.
394 Mass. 89 474 NE2d. 1059

Quoted verbatim [2] [3]

Gen. law. c. 127 Sec. 97 as appearing
in St. 1968 c. 627 provides,
" Prisoners so removed shall be Subject
to their (original sentences) and laws
Governing (Parole) " Not DETAINEES. ///////

pg #16>

## Punishment (cont.)

This plaintiff spent from 15-30 days in segregated units. (non-stop). (See Amended complaint in this case.)

Prior to his release on his (last Prison Sentence) feb. 01 the Plaintiff was charged with A & B during a Prison altercation. It is that (former) charge that the defendants are using (along with his D.O.C. classificational 6-Part folder)* that has inspired Placement in maximum security. Plaintiff is at the time of this complaint and continually being (Punished) for his Previous incarceration <again>(while unadjudged guilty as a detainee)

* Karen Dinaddo (MCI classification/concord)
Carol Lawton (Deputy of classification/occc) > made these assertions

Pg #17

The Plaintiffs treatment is worse than that of convicted felons within the confines of the same institutions.

" Pretrial detainees retain the rights afforded unincarcerated individuals, they are Protected by the temporary Standards of decency clause of the 8th. Amendment "....

Due Process requires they be Subject to only those restrictions and Privations "

See: Bell v. Wolfish 99 Sct. 1861

Rhem v. Malcolm 507 F2d. 336 (above Supra)

" Due Process requires that Pre-trial detainees not be Punished
See: Ingraham v. Wright 430 U.S. 651 97 Sct.

Pg #18

# Bell v. Wolfish

Has emphasis on what Middlesex and Suffolk County do and have done on a <u>daily basis</u> (consistantly) since 1988,

" loading a detainee with chains and shackles and throwing him into a dungeon " <u>I.D. at 539 n.20</u> <u>99 S.Ct. at 1874 n.20</u>

what constitutes a dungeon? Simply a punishment setting designed for the cruelest of convicted and condemned law breakers. A maxium security Prison is a modern day dungeon, and pretrial detainees are without the guilty finding of a tribunals mandate and sentencing. Only Massachusetts is exploiting these unconstitutional violations.

Pg. #19

Stringer V. Rowe 616 F2d 993

**\*500** (FN13.) Although Stringer was concerned with treatment of convicted persons rather than with pretrial detainees and thus involved the Eighth Amendment rather than the Due Process Clause, it is relevant here because any action that would violate the Eighth Amendment as cruel and unusual punishment would obviously constitute punishment which may not be imposed upon pretrial detainees without violating their due process rights.

Dept. of Corrections do( NOT )
Keep the pretrial detainees
seperated from the convicted
felons.

[8] Appellees do not dispute the fact that the safekeepers in the A & O Unit are subject to significantly different and more restrictive conditions of confinement than those applied to the general prison population. Although the conditions of safekeepers on the A & O Unit appear substantially similar to the conditions of convicted prisoners on that unit, that similarity is insufficient to defeat plaintiffs' equal protection arguments. Absent a rational justification of the different treatment, there is a violation of equal protection when pretrial detainees are held in more burdensome conditions of confinement than convicted offenders in the same institution. The defendants argue that the safekeepers are held at the prison for much shorter periods of time than are the convicted felons and that the situation of the safekeepers justifies the different treatment. Defendants argue further that keeping the safekeepers in the A & O Unit is justified by the needs of keeping them separate from convicted persons, preserving internal order, and effectively managing the institution.

above
supra > Lock V. Jenkins 641 F2d. 488 (Ind. 1981)

. Brief of appellees at 43. As the Second Circuit indicated in Rhem v. Malcolm, 507 F.Supp 333 (2d Cir. 1974), "The demands of equal protection of the laws and of due process ... prevent unjustifiable confinement of detainees under worse conditions than convicted prisoners." Id. at 336. See also, Inmates of Suffolk Co. Jail v. Eisenstadt, 360 F.Supp. 676, 686 (D.Mass.1973) aff'd 494 F.2d 1196 (1st Cir.), cert. denied sub nom. Hall v. Inmates of Suffolk County Jail, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974); Jones v. Wittenberg, 323 F.Supp. 93, 99-100 (N.D.Ohio 1971), aff'd sub nom. Jones v. Metzger, 456 F.2d 85 (6th Cir. 1972); Brenneman v. Madigan, 343 F.Supp. 128, 138 (N.D.Cal.1972); Seal v. Manson, 326 F.Supp. 1375 (D.Conn.1971); Tyler v. Ciccone, 299 F.Supp. 684 (W.D.Mo.1969).

State prisoners in the same facilities are allowed
Paying jobs, t.v.s radios, sweat cloths, sentence reduction
dental care and mental health (priority)

pg #20

In the only known case where Pre-trial detainees were sanctioned / allowed by the court to be in state Prisons was <u>Lock v. Jenkins</u> <u>641 f2d. 488</u> (Ind. 1981) and the detainees known as "Safe keeps" did not interact with the convicted felons and were deemned Security risks at the county (through judicial and administrative Due Process.)

(FN2.) Ind.Code s 35-2.1-1-1 (1971).  These pretrial detainees are sent to the prison primarily for medical or security reasons.  Typical non-medical reasons for sending pretrial detainees to the prison were that jail officials considered the detainees to be in danger from or a danger to other detainees. One safekeeper had previously escaped from county jails.  The average length of confinement of safekeepers at the prison was two months.  Several pretrial detainees stayed at the prison for much longer than two months; one was a safekeeper for three years.  One hundred and nine men were confined at the prison as safekeepers in the period from November 1, 1974 to October 2, 1978.

until even that placement was found to be unconstitutional.
(in 1978)

In a time when courts gave prison officials

21)

## Conclusion

### Massachusetts (defendants)

Placing Pretrial detainees in State Prisons are done for the Sole monetary Pleasure of the governing defendants.

There is no legitimate govermental purpose. The counties have an abundance of Space, units, cells, land and adequate housing to hold their own detainees in their jurisdictions.

Their is no compelling necessity to justify practices which violate the constitution and it's sanctimonous standing on the Presumption of innosence.

Budgetary restraints do not justify constitutional violations. See: Breif for NAACP as Amicus

18 USC sec. 4042(2)

22)

Own admission of the "state" show that they preordained state prison placement (retalitory) if they say they did not, the plaintiff will prove it at trial!

" The federal Court is bound with inherent authority to correct issues regarding Pretrial detainees confinement "...

Knetsch v. U.S. 364 U.S. 361, 370 81 Sct. 132, 137 5 L.Ed. 2d. 128 (1960)

An Injuction and Permanent ORDER to have all Pretrial detainees in a "infamous" state Prison OCCC, SBCC, walpole, Concord norfolk relinquished back to their respective county Jurisdictions.

Respectfully
Eric Kelley (Pro se)

Procedural History

<u>Temporary Decree</u>

to the Concord (Reformatory) Prison

See Also: <u>Inmates v. Kearney</u> 734 f. Supp. <u>561, 564 (Dc Mass. 1990)</u>

# EXHIBIT "A"

↓    In *Rufo v. Inmates of Suffolk County Jail*,[72] state officials sought to modify a consent decree previously entered into, that had resulted from constitutionally deficient conditions at the facility known as the Charles Street Jail. The terms of the program set out in the decree were designed to include 309 single-occupancy rooms. By the time construction began in 1984, the inmate population had outpaced population projections. The state officials were then ordered to build a larger jail. The number of cells was later increased to 453 with construction beginning in 1987. In 1989 the sheriff moved to modify the consent decree to allow double-bunking in a portion of the cells to raise the capacity of the new jail to 610 male detainees. The federal district court supervising the consent decree applied the standard of *United States v. Swift & Co.*[73]


> Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.[74]

The district court stated that because a separate cell was an important element of the original relief sought, a more flexible standard would not be available to the sheriff. In moving to modify the decree, the sheriff relied on Federal Rule of Civil Procedure 60(b)(5) and (6), which in part provides that a court may relieve a party from a final judgment, order, or proceeding for the <u>reason that the judgment has been satisfied</u>, or it is no longer equitable that the judgment should have prospective application, or if there is any other reason justifying relief from the operation of the judgment.

The sheriff asserted that modification of the decree would improve conditions by cutting down on transfers of detainees away from the area where their family members and legal counsel were located. Further, in the transfer facilities the detainees would be double-celled in less desirable conditions. Finally, the public interest would be served by such modification because fewer releases and transfers to halfway houses would be necessary and thus fewer escapes would occur.

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF THE TRIAL COURT

*this Motion was Allowed

Hampden, ss

Hampden Superior Court
Indictments 00-1511 1-6

COMMONWEALTH    )

v.                        )

DAVID TUTTLE    )

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR REMAND TO HOUSE
OF CORRECTION

HAMPDEN COUNTY
SUPERIOR COURT
FILED

FEB 2 2 2002

*[signature] CLERK MAGISTRATE*

## STATEMENT OF THE CASE

Defendant David Tuttle was transferred to MCI Cedar Junction from the Hampden County House of Correction on January 9, 2002, from the Hampden County House of Correction, where he was awaiting trial in this matter. His bail is $100,000, and he is not under sentence.

There is no Court order sanctioning Mr. Tuttle's removal from the House of Correction to MCI Cedar Junction. Mr. Tuttle is represented by the same attorney today, October 31, 2001, and no notice was ever provided to this attorney of

